[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is the owner of a medical office building located at 2660 Main Street in Bridgeport. The defendant occupies two suites in the building using one, Suite 101, as a pharmacy and; the second, Suite 108, for business offices. The plaintiff brings these two actions seeking judgment of immediate possession of both premises. The plaintiff claims that it is entitled to possession first because the defendant failed to properly execute its option to renew the leases for both premises. Secondly, the plaintiff claims that the defendant has breached the lease for Suite 101 by constructing a hallway service counter. Because the lease for Suite 108 is contingent upon there being no default in the lease for Suite 101, the plaintiff claims the right to terminate both leases because of the alleged breach. The defendant contends that the options to renew were properly exercised and that construction of the service counter was approved by the plaintiff's predecessor, in title.
The plaintiff acquired the medical building from Dr. Irving Sherman, the prior owner, on July 1, 1985. On that date, the CT Page 1911 defendant was in possession of both, Suites 101 and 108 pursuant to written leases. In July 1979, Dr. Sherman had entered into a ten-year lease for Suite 101 with the defendant's predecessor. In January 1980, this lease had been modified to permit assignment to the defendant Computerx Pharmacy, Inc. In December 1984, Dr. Sherman had entered into a lease with the defendant for Suite 108. The term of this lease was five and one-half years, so both leases expired on July 1, 1989.
Both leases provided that the defendant could renew for an additional period of ten years. In order to exercise the options, the defendant was required to give the landlord notice of the exercise at least one year before the expiration of the leases.
On May 31, 1988, the defendant sent two letters by certified mail, return receipt requested, to the Kimball Group, Inc., the plaintiff's managing agent for the medical building. Although one letter pertained to Suite 101 and the second concerned Suite 108, the content of each letter was identical. Each stated, "The five year option is hereby exercised per existing lease." Both letters were received by the Kimball Group, Inc. on June 6, 1988, more than one year prior to the expiration of the leases on July 1, 1989.
The plaintiff's claim that the defendant's exercise of the options to renew was ineffective rests solely on the defendant's purported exercise of five-year options to renew, whereas the leases provided for ten-year options. The plaintiff contends that the attempt to exercise five-year renewals constituted an attempt by the defendant to unilaterally amend the terms of the leases. This contention was not supported by the evidence, however.
The defendant's operations manager, Michael Liccamele, testified that the reference in the letters to a five-year option was a mistake caused by confusion resulting from the number of leases and lease modifications concerning both suites. (Two leases and two lease modifications were made exhibits at trial.) His unrebutted testimony was that he corrected the error a short time after the letters were sent. Mr. Kimball, one of the owners of the Kimball Group, the plaintiff's agent, told Mr. Liccamele that he did not understand why the defendant sent letters referring to five-year options. Mr. Liccamele promptly told Mr. Kimball that his intention was to renew the leases, no matter what the length of the option periods, whether five years or ten. Mr. Kimball did not respond to this statement. The defendant later sent another letter by registered mail following up on on the conversation.
Whether a renewal option in a lease has been exercised is a question of fact to be decided with reference to the intent of the CT Page 1912 parties as expressed in their words and deeds. Perrotti v. Chiodo, 21 Conn. App. 288 (1990). The court finds that the defendant properly exercised the ten-year renewal options in both leases. The leases require only that the defendant give the plaintiff "notice" of the exercise of the options one year in advance of the lease terminations. The leases do not require that notice of the exercise be in writing. By giving written notice, more than one year in advance of the lease terminations and by; correcting the error in the written notices in a conversation with the plaintiff's agent shortly thereafter, the defendant made its intention clear and properly exercised the ten-year renewal options in accordance with the requirements of the leases.
The plaintiff's second claim is that the defendant breached the lease for Suite 101 by constructing and maintaining a hallway service counter. On July 1, 1985, when the plaintiff purchased the medical building, the defendant was using Suite 101 as a retail pharmacy and maintained a service counter which provided counter access to the suite from the ground floor hallway of the medical building. The hallway leads from the parking lot for the building to the building elevators. The defendant first used the service counter beginning early in 1980 and has continuously used it since that time to accept prescriptions and dispense the medications after the prescriptions are filled. The plaintiff contends that the construction and use of the counter are in violation of the lease because the alterations were not approved in writing by the landlord.
Prior to the installation of the service counter, the wall separating Suite 101 from the ground floor hallway of the medical building contained a window. In late December 1979, the defendant's predecessor sent Dr. Sherman, the then owner of the building, a letter requesting Dr. Sherman's approval of certain alterations to Suite 101, including the addition of "a glass doorway into the hall." Dr. Sherman approved this modification in writing with the condition that the tenant would restore the. premises to original condition at the termination of the lease if requested by the landlord.
A glass doorway was never installed because the Pharmacy Commission would not approve such a door. Instead, the defendant constructed the hallway service counter as it exists today with a, metal, roll-down gate for purposes of securing the premises. The counter is recessed into the wall and does not protrude into the hallway. No material changes have been made to the counter since its construction in January or February 1980.
Mr. Liccamele testified that Dr. Sherman, who maintained his office in the medical building, verbally approved the change from a glass door to the service counter. Moreover, a written CT Page 1913 modification of the lease signed by Dr. Sherman in January 1980 recites, "The landlord grants the Tenant permission to add a doorway into the hall. . . ." The reference to a "glass" doorway, as described in the December 1979 letter, was not repeated.
The defendant also urged the court to find that the second lease, for Suite 108, implicitly validated the service counter. The lease for Suite 108 was executed on December 16, 1984, when the service counter had been in operation for approximately four years. The lease states, "This lease is contingent upon the coexistence without default of the lease of suite 101 and becomes null and void immediately upon default or termination of the lease covering suite 101." The defendant argues that the signing by Dr. Sherman of this lease with a cross-default provision is written evidence that Dr. Sherman did not consider the construction and maintenance of the service counter as a default under the Suite 101 lease.
The plaintiff's argument that Dr. Sherman did not approve the service counter in writing rests on the fact that the December 1979 letter refers to a "glass" doorway and the fact that there is no specific written approval by Dr. Sherman of a hallway service counter. The defendant's use of the hallway service counter is objectionable to the plaintiff because the defendant's customers wait in the hallway while their prescriptions are filled, loitering in and obstructing the hallway and damaging it by dropping cigarette butts.
The court finds that the hallway service counter did "have written approval of the landlord," as required by the lease. In December 1979, Dr. Sherman signed "Agreed" to the letter requesting approval of a glass doorway into the hall. In January 1980, he signed the lease modification approving "a doorway into the hall." In December 1984, long after the hallway service counter was constructed and being used, he entered into a new, lease with the defendants for Suite 108. Dr. Sherman expressly conditioned the existence of the new lease on there being no default in the lease for Suite 101. In signing and preparing the new lease (Dr. Sherman never had an attorney and drafted his own leases), he was acknowledging that the lease for Suite 101 was not in default. The court finds, based on all these writings, that the plaintiff's predecessor provided written approval of the hallway service counter.
The court further infers that the physical configuration of the door or counter to the hall was not of primary importance to Dr. Sherman. His principal concern was to have the right to require the tenant to restore the premises to their original condition at the termination of the lease. When he signed the December 1979 letter, Dr. Sherman wrote "Agreed, providing at CT Page 1914 termination of lease tenant will restore premises to present condition for use as medical office if requested by Lessor." The January 1980 lease modification contains virtually identical language.
The plaintiff has failed to sustain its burden of proof with respect to either of its claims. Judgment is rendered for the defendant in both actions.
Vertefeuille, J.